**CLERK'S OFFICE**
**A TRUE COPY**
**Feb 18, 2026**
**s/ MMK**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of <br> *(Identify the person, property, or object to be tracked )* <br><br> a blue 2019 Dodge Ram (WI WM9948, VIN 1C6SRFJT4KN585835) | )<br>)<br>)<br>)<br>)<br>)     Case No.     26-MJ-39 |

## TRACKING WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☑ is located in this district; ☐ is not now located in this district, but will be at execution; ☐ the activity in this district relates to domestic or international terrorism; ☐ other:

                                                        .

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that *(check the appropriate box)* ☐ using the object ☑ installing and using a tracking device to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: a blue 2019 Dodge Ram (WI WM9948, VIN 1C6SRFJT4KN585835); 3367 North 50th Street, Milwaukee, Wisconsin

**YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by   02/28/2026   *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until   04/04/2026   *(no later than 45 days from the date this warrant was issued)*. The tracking may occur within this district or another district. To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

☑ into the vehicle described above      ☑ onto the private property described above
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)*   Honorable William E. Duffin   and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ Pursuant to 18 U.S.C. § 3103a(b)(1), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and this warrant prohibits the seizure of any tangible property or any wire or electronic communications (as defined in 18 U.S.C § 2510). I therefore authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*
☐ for       days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of   05/18/2026  .

Date and time issued:     02/18/2026 at 9:20 a.m.

*Judge's signature*

City and state:     Milwaukee, Wisconsin          Honorable William E. Duffin, U.S. Magistrate Judge
                                                        *Printed name and title*

Case No.

## Return of Tracking Warrant With Installation

1.  Date and time tracking device installed: _____

2.  Dates and times tracking device maintained: _____

3.  Date and time tracking device removed: _____

4.  The tracking device was used from *(date and time)*: _____

   to *(date and time)*: _____ .

## Return of Tracking Warrant Without Installation

1.  Date warrant executed: _____

2.  The tracking information was obtained from *(date and time)*: _____

   to *(date and time)*: _____ .

## Certification

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

CLERK'S OFFICE
A TRUE COPY
Feb 18, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>a blue 2019 Dodge Ram (WI WM9948, VIN<br>1C6SRFJT4KN585835) | )<br>)<br>)<br>)<br>)<br>) | Case No.   26-MJ-39 |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __841; 843; 846__ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ property designed for use, intended for use, or used in committing a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
a blue 2019 Dodge Ram (WI WM9948, VIN 1C6SRFJT4KN585835);  3367 North 50th Street, Milwaukee, Wisconsin

☑ Delayed notice of __90__ days (give exact ending date if more than 30 days: __05/18/2026__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone

_____
*Applicant's signature*

TFO Jonathon Newport
*Applicant's printed name and title*

Date:   02/18/2026

_____
*Judge's signature*

City and state:   Milwaukee, WI

United States Magistrate Judge William E. Duffin
*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Jonathon Newport, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the location of a vehicle more particularly described as a blue 2019 Dodge Ram (WI WM9948, VIN 1C6SRFJT4KN585835) (hereinafter "**subject vehicle**").

2.      I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives and have been since November of 2024. I am tasked with investigating federal firearm violations, including possession of machine guns, straw purchasing of firearms, felons in possession of a firearm, and firearm trafficking. I have been a Police Officer for the Milwaukee Police Department and have been a Police Officer for over twelve (12) years. I am currently assigned to the Milwaukee Police Department's Special Investigations Division. I am assigned to the Violence Reduction Unit, responsible for aiding in investigations of crimes, such as, but not limited to: Homicide, First Degree Reckless Injury, First and Second Degree Recklessly Endangering Safety, Armed Robbery, weapon offenses, and drug dealing. I am primarily focused on investigating drug and firearm offenses, contrary to Wisconsin State Statute and USC. I have primarily investigated drug and firearm offenses for over twelve (12) years in various capacities, including federally as a Task Force Officer for the FBI and currently for ATF. I am considered an expert by court standards and have testified as an expert in court proceedings related to drug dealing of marijuana, cocaine, heroin, fentanyl and methamphetamine. I have been involved in the execution of at least 500 residential search warrants. I have been the affiant and assisted in firearm and drug search warrants to include: residential, forensic cell download/analysis, social media,

cloud storage, GPS, and trap and trace to aid in investigations. I have attended various trainings regarding firearm and drug investigations to include: Characteristics of Armed Gunmen, Non-Drug evidence, Detective Development Course, Plain Clothes (Undercover) Training, Drug Expert Court Testimony, Undercover Operations in Cook County Criminal Justice System, Effective Investigative Techniques of Cellular Phones in Investigations, and the FBI's Understanding Investigative Techniques for Modern Communication Course.

3. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (possession with the intent to distribute and distribute controlled substances), 846 (conspiracy to possess with the intent to distribute and distribute controlled substances), and 843(b) (use of communications facilities to facilitate controlled substance felonies), have been committed, are being committed, and will be committed by **Brian Brown** and others. There is also probable cause to believe that the location of the **subject vehicle** will constitute evidence of those criminal violations and may lead to the identification of other individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5. Law enforcement officers are investigating **Brian Brown** and his associates for distribution of controlled substances. The investigation to date has included traditional law enforcement methods, including, but not limited to: information from other law enforcement

2

officers, search warrants, documentary evidence, telephone toll data, public records, and physical surveillance.

6. In December of 2025, Task Force Officer Jonathon Newport initiated a drug investigation into the residence of 5237 North Sherman Boulevard #1. On December 24, 2025, Officer Newport conducted surveillance of 5237 North Sherman Boulevard #1 (Milwaukee, WI), due to an anonymous drug tip that the Milwaukee Police Department received on December 24, 2025, in MPD CAD P2512240406.

7. Officer Newport observed that there were two vehicles that were parked out front, a red 2024 Chevrolet Trailblazer (WI IBLVND3, VIN 3GNKBHR46RS164292) and a silver 2002 Chevrolet Suburban (WI 141WYM, VIN 1GNFK16Z42J274256). A DOT check showed that Gabrielle R. Mallory (DOB: 04/07/1966) of 5237 North Sherman Bl #3 (Milwaukee, WI) registered the Trailblazer. A DOT check showed that Wardell Crutchfield (DOB: 02/13/1946) of 535 West Concordia Avenue #15 (Milwaukee, WI) registered the Suburban. At 11:57AM, a black male appeared from the front door, walked to the south and entered the front door to 5233/5233A North Sherman Boulevard. At 12:06PM, a woman and man exited the side door to the multi-unit residence, entered the Suburban and drove away. At 1:17PM, a woman wearing a pink hat appeared from the south, walked to the front door and entered. The woman remained inside of the target house at the front door, exited less than thirty-seconds from the same front door, and walked away south. Based on the woman appearing on foot from the south, being at the target house for less than thirty seconds, with the anonymous tip that there are drug sales from the residence, Officer Newport believes that this was a suspected drug sale.

3

8.     Officer Newport conducted a check through Milwaukee Police Department records to establish that the front door was to unit 1 of the target house. Officer Newport observed on January 8, 2025, Milwaukee Police responded to that location for trouble with subject / property owner - tenant problem. The Officers that responded met with the caller from unit 1, who allowed Officers inside of unit 1, which was the front door where Officer Newport observed the woman in the pink hat enter and exit.

9.     Officer Newport watched the Officer's body worn camera, which showed Richard Jackson with phone number of (414) 678-6584 was the caller. Jackson was with an unknown woman in the first bedroom as you enter the residence on the north side. Jackson told Officers that his roommate/property owner lived in the next bedroom to the west on the north side of the house, who Jackson identified as "Kenneth Wade". Jackson told Police that Wade left in the white four-door car with a Wisconsin registration plate of AYD9590; a DOT check showed that Terry Stocks (DOB: 11/04/1968) of 232 North 75th Street (Milwaukee, WI) registered a cream/ivory 2008 Saturn Outlook SUV with that registration plate, with a VIN of 5GZER23718J196812. In summary, Jackson told Police that he subleased from Wade by renting the room from him, which made Wade the "landlord". Wade left before Police arrived.

10.     On December 26, 2025, Officer Newport conducted surveillance of 5237 North Sherman Boulevard #1 (Milwaukee, WI) regarding the drug dealing compliant. At 9:45AM, a woman exited the front door to 5233 North Sherman Boulevard (next door neighbor to the south), walked to the front door, removed the mail from a mailbox and entered the front door to the 5237 North Sherman Boulevard #1 at 9:46AM. At 9:47AM, the same woman exited the front door in her robe and walked back to her residence.

4

11. On December 29, 2025, Officer Newport conducted surveillance of 5237 North Sherman Boulevard #1 (Milwaukee, WI), as part of an ongoing drug investigation. As Officer Newport arrived, Officer Newport observed a black 2012 Honda Odyssey minivan (WI AUL5771, VIN 5FNRL5H68CB003660). A DOT check showed that Savannah F. Brown (DOB: 12/28/1999) of 3367 North 50th Street (Milwaukee, WI) registered the Odyssey. Officer Newport did not see the red Trailblazer that was parked in front of 5237 North Sherman Boulevard #1 the last two times on surveillance. At 12:07PM, the woman commonly wearing the brown robe from 5233 North Sherman Boulevard (next-door neighbor) exited her house, walked to the 5237 North Sherman Boulevard #1 and entered the front door. At 12:10PM, the woman exited, walked back to her house and entered. At 12:12PM, a man exited the target house, identified as Brian D. Brown (black male, 05/18/1973), entered the driver seat of the Odyssey, grabbed an item, exited the driver seat and walked back into the 5237 North Sherman Boulevard #1. At 12:14PM, **Brian Brown** exited the house carrying a soda can, entered the Odyssey and drove away. Officer Newport conducted a check of the registration plate on the Odyssey and then a check of law enforcement databases to locate Brian D. Brown. Officer Newport reviewed a Milwaukee Police Department booking photo and Wisconsin Driver's License photo of **Brian Brown** to confirm it was him. At 12:33PM, the neighbor woman in the brown robe exited her residence carrying a black plastic bag, though Officer Newport could not discern the content of the bag. The neighbor entered the front door of 5237 North Sherman Boulevard #1. At 12:38PM, she exited the front door and walked back to her house. When the neighbor left, she was not carrying the black bag anymore. At 12:43PM, **Brian Brown** returned in the Honda Odyssey and parked in the front. **Brian Brown** walked and freely entered the front door to 5237 North Sherman Boulevard #1. At 12:45PM, **Brian Brown** exited

5

the front door and walked towards the driver's door. As **Brian Brown** was walking, Officer Newport observed a larger bulge in **Brian Brown**'s right pants pocket. **Brian Brown** was already holding a cell phone and car keys in his right hand. **Brian Brown** drove away in the Odyssey. At 12:50PM, a black Lexus without registration plates parked in front of 5237 North Sherman Boulevard #1. The front passenger was a woman, who exited, walked to the front door, knocked on the front south window, and was allowed in. At 12:52PM, the woman exited, entered the Lexus, where the driver and woman looked down at something in the car together and drove away. They drove around and parked on the east side of North Sherman Boulevard, parked shortly, but drove away. At 1:23PM, a male walked from the south on the city sidewalk, walked towards the front door of the 5237 North Sherman Boulevard #1, and entered. At 1:27PM, the male exited the target house, with his right-hand fingers curled up as if to be carrying a small item and secured that item in his right pant pocket. The male walked back southbound away from the house. At 1:36PM, a black 2016 Nissan Versa (WI BAP8933, VIN 3N1CN7AP0GL906829) arrived and parked in front of 5237 North Sherman Boulevard #1 with a driver and front passenger. A DOT check showed that Precious S. Jackson (DOB: 01/04/1987) of 5468 North 53rd Street (Milwaukee, WI) registered the Nissan. The front passenger exited carrying gloves in her left hand, walked to the front door of 5237 North Sherman Boulevard #1, and entered at 1:37PM. At 1:37PM, the woman exited wearing only one glove on her right hand, carrying the other glove in her right hand and appeared to be carrying a small item in her left hand – the woman's palm was facing upward, and her fingers were closed in a fashion consistent with securing a small item in her palm. She entered the Versa and they drove away. At 1:53PM, the same black Lexus sedan returned with the same occupants. The front passenger woman exited the front passenger seat, walked to 5237 North Sherman Boulevard

6

#1, knocked on the same front south window and was allowed in at 1:54PM. At 1:55PM, the woman exited the front door, walked to the Lexus and they drove away. At 2:07PM, the neighbor woman in the brown robe exited her residence, walked and entered 5237 North Sherman Boulevard #1 at 2:08PM. At 2:09PM, she exited the front door of 5237 North Sherman Boulevard #1, walked back to her house and entered.

12. Officer Newport knows from experience that drug houses are established for multiple reasons to include sales, manufacturing, and/or stashing. Officer Newport observed that all the occupants (aside from the single instance wherein a woman carried a black bag, but left it at the target house) were not carrying anything large to and/or from 5237 North Sherman Boulevard #1. Officer Newport knows that drugs are easily concealed in clothing. Based on the frequent quick visits from vehicles, neighbors, and on foot, Officer Newport believed that these visits were for the purpose of buying drugs from 5237 North Sherman Boulevard #1; this is also supported by the anonymous concerned citizen reporting 5237 North Sherman Boulevard #1 as a drug house. From experience, Officer Newport knows that drug houses can supply their neighborhood, making it convenient for drug users to purchase their product locally. The examples of this are: the neighbor woman in the brown robe that repeatedly walked to her neighbor's house (5237 North Sherman Boulevard #1) for short times and returned home; the male that approached on foot in the middle of a cold high wind day for another suspected purchase; and the Nissan Versa which is registered a mile away from 5237 North Sherman Boulevard #1. Additionally, the first suspected purchase with the woman was when **Brian Brown** was present at the location. Officer Newport knows from experience that drug dealers can secure larger amounts of controlled substances inside of drug houses for safe keeping, leave in vehicles and return to the drug house

7

to restock for more street-level distribution. **Brian Brown** appeared to have free access to the residence, including leaving and returning to grab his can of soda that was left inside of the residence. When **Brian Brown** leaves, there is someone left at the residence who controls the residence and suspected sales. When **Brian Brown** left, he closed the door behind him. Others must knock or have the door open for them when they approach the residence. Officer Newport reviewed the surveillance photos that Officer Newport took and observed that others wait to have the door opened for them, unlike **Brian Brown** who exercises the power to open the door himself.

13. Officer Newport conducted a criminal history check of **Brian Brown**. Officer Newport observed **Brian Brown** is a convicted felon. In Milwaukee County court case 1998CF003284, **Brian Brown** was convicted of 961.41(1m)(cm)1 (Possession with Intent to Deliver-Cocaine). In Milwaukee County court case 2000CF003829, **Brian Brown** was convicted of 961.41(1m)(cm)2 (Possession with Intent to Deliver-Cocaine). In Waukesha County court case 2007CF000628, **Brian Brown** was convicted of 961.41(3g)(c) (Possession of cocaine). In Waukesha County court case 2010CF000107, **Brian Brown** was convicted of 961.41(3g)(c) (Possession of cocaine). In Waukesha County court case 2013CF000889, **Brian Brown** was convicted of two counts of 961.41(1m)(cm)1r (Manufacture/Deliver Cocaine) as a Conspiracy.

14. Officer Newport watched 5237 North Sherman Boulevard #1 (Milwaukee, WI). At 1:24PM, a Fedex delivery truck delivered a package to the house. At 1:25PM, an older black male exited the front door of the house, grabbed the package, and took it inside. At 1:41PM, a woman arrived and removed a folding chair and blue bag from the car and took it inside of the house.

15. On December 31, 2025, Officer Newport watched 5237 North Sherman Boulevard #1, as part of a drug investigation. As Officer Newport arrived at the house at 9:20AM, Officer

8

Newport observed a black male standing on the porch, knocking on the south front window (common window that others knock on to gain entry). The man did not get any response and called someone. Eventually the door was opened for the man and he entered. At 9:25AM, the man exited and re-entered, ultimately leaving at 9:27AM, walking southbound away from the house. At 12:39PM, a woman approached the front door, knocked and waited. The woman was allowed inside. At: 12:40PM, a male approached on foot, stood outside and waited. As the woman exited at 12:41PM, the male then entered the front door. At 12:41PM, the male then exited the front door and walked away. At 1:44PM, a black Nissan Versa parked in front of the residence. The woman was the front passenger, and male was the driver. The woman exited, walked to the front door, and was allowed inside. At 1:45PM, the woman exited the front door, entered the Nissan and the male drove them away.

16. On January 3, 2026, Officer Newport watched 5237 North Sherman Boulevard #1, as part of a drug investigation. At 11:50AM, a black Nissan Versa arrived with a woman as the front passenger, and a man as the driver. The woman exited, walked to the front door, knocked and was allowed in at 11:51AM. At 11:52AM, the woman exited the house, walked to the Nissan and they drove away.

17. On January 3, 2026, Officer Newport watched 5237 North Sherman Boulevard #1, as part of a drug investigation. At 11:50AM, a black Nissan Versa arrived with a woman as the front passenger, and a man as the driver. The woman exited, walked to the front door, knocked and was allowed in at 11:51AM. At 11:52AM, the woman exited the house, walked to the Nissan and they drove away.

9

18. On January 4, 2026, a Milwaukee County Court Commissioner granted Officer Newport a dog sniff warrant to enter the curtilage and sniff the front door to 5237 North Sherman Boulevard, Unit 1.

19. On January 4, 2025, Officer Newport watched 5237 North Sherman Boulevard #1, as part of a drug investigation. At 12:16PM, Cedric Strickland walked to the front door, arriving from an unknown location. Strickland unlocked the front door and entered. At 12:22PM, Strickland left the house and walked to the neighbor's house at 5233 N. Sherman Bl. At 12:57PM, while Strickland was away, a man approached the front door. The man knocked on the front door and waited. No one answered. The man knocked on the front south window. No one answered. The man opened the screen door and knocked on the main door. No one answered. The man waited but left because there was no answer. Based on Strickland not being at home, a suspected drug customer knocking and not receiving an answer, and the totality of the previous surveillance operations, I believe that Strickland is the primary occupant/distributor from 5237 N. Sherman Bl. 1. At 1:06PM, Strickland returned to the house, unlocking the front door. At 2:22PM, a woman arrived in a 2017 Jeep Cherokee (WI AAP-1057, VIN 1C4PJMCB4HD230449). A DOT showed that Bartholomew Jones (DOB: 10/18/1964) of 6140 W. Leon Ter. (Milwaukee, WI) and Alisha G. Jones (DOB: 11/02/1963) of 6140 W. Leon Ter. (Milwaukee, WI) registered the Jeep. Strickland provided money to the woman and went back inside of the house.

20. On January 6, 2026, at approximately 11:00PM, Milwaukee Police Officer Kaonnie Whitley informed Officer Newport of a "positive alert" of 5237 N. Sherman Bl., Unit 1. Officer Whitley provided Officer Newport with the following credentials of Officer Whitley and his K9: Police Officer Kaonnie Whitley of the Milwaukee Police Department's Specialized Patrol Division

10

(SPD) is the current handler of the Drug Detection Canine **"THOR"** and that Police Officer Kaonnie Whitley and **"THOR"** have received six weeks (200 hours) of intensive training and certification through Shallow Creek Kennels which certifies their canine teams via the standards set by the North American Police Work Dog Association (NAPWDA), deploying and utilizing a drug detection canine; that this certification is based on guidelines set forth by the Working Group on Dog and Orthogonal Detector Guidelines which is a nationally based group in partnership with local, state, federal and international agencies including private vendors, law enforcement and first responder; that this training establishes consensus-based best practices for the use of detection canine teams by improving the consistency and performance of deployed teams which will improve interdiction efforts as well as courtroom acceptance; Shallow Creek Kennels is owned and operated by John Brannon which has been training and certifying Drug Detection canines since 2004. John was a canine handler for 22 years in which he ran 5 dual purpose canines over the course of his canine career. John is a Master Trainer for NAPWDA. Shallow Creek Kennels under John's guidance has certified over a thousand canine teams since 2004. Annually the Milwaukee Police Department Canine Unit goes through a rigorous NAPWDA certification conducted by NAPWDA Master Trainer Robert Badertscher; to include Drug Detection Canine **"THOR"**. Robert has over 24 years as a handler and trainer for the Joliet Police Department in Illinois. Since 2017, Robert has been certifying canine teams in patrol and drug detection across the United States. Since 2020, Robert has certified over one hundred canine teams annually in patrol and drug detection. Police Officer Kaonnie Whitley is the current handler of the Drug Detection Canine **"THOR"** and that **"THOR"** is trained to detect the odor of controlled substances; that these substances include marijuana, cocaine, heroin, methamphetamine, etc., as well as other

11

dangerous drugs due to chemical processing similarities; that upon location of the odor of these controlled substances, the dog's behavior will change; that the dog is trained to come to a passive final response by sitting, standing or laying down while staring at the source of the odor; that this final response is called an **"Indication"**; furthermore, this final response or **"Indication"** may also indicate items recently contaminated with, or associated with, the odor of one or more of the controlled substances; according to Police Officer Kaonnie Whitley, the current handler of the Drug Detection Canine **"THOR"**, that when a dog is trained to detect a substance that it learns to discriminate the odor vapor of that substance from other odors in the environment by reacting to the compound(s) that best help it earn reinforcement from the drug detection canine handler; that with sufficient training, the compound(s) whose detection most often results in reinforcement becomes the "odor detection signature"; Police Officer Shawn Burger of the Milwaukee Police Department's Specialized Patrol Division is currently the head trainer for the Milwaukee Police Department since 2018. Police Officer Shawn Burger is a member of the United Stated Police Canine Association (USPCA), North American Police Work Dog Association (NAPWDA), and Wisconsin Law Enforcement Canine Handler Association (WLECHA). That Police Officer Shawn Burger is the current handler of the Drug Detection Canine "APOLLO" and that he has attended numerous seminars as well as a 320-hour course of intensive training on the deployment and utilization of a Drug Detection Canine through the Steinig Tal Kennels and Fox Valley Technical Institute in Campbellsport, Wisconsin; that Police Officer Shawn Burger has been involved with the training and certification of other drug detection canines for the Milwaukee Police Department as well as other law enforcement agencies within the State of Wisconsin and has trained and certified at least one hundred (100) drug detection canine teams for said agencies. In 2019, Police

12

Officer Shawn Burger completed the United States Police Canine Association (USPCA) 480 hour "Basic Patrol Dog and Narcotic Instructor's Course" conducted by the Saint Paul Police Department Canine Unit. Police Officer Shawn Burger, as Senior Canine Handler for the Milwaukee Police Department, maintains an ongoing training regimen with the other drug detection canine teams for the Milwaukee Police Department which includes Police Officer Kaonnie Whitley and his Drug Detection Canine **"THOR".** According to Police Officer Kaonnie Whitley, that his Drug Detection Canine **"THOR"** has detected controlled substances more than "100" times in the past which included training; that **"THOR"** alerts have been the basis for zero (0) search warrants and more than seventy-five (75) searches of motor vehicles; that in each alert, drugs that **"THOR"** is trained to find have been recovered or a drug nexus has been found; that the canine has been used in these motor vehicle searches and in the execution of search warrants in the past and that during these searches the canine has found controlled substances for the officers resulting in the arrest and issuance of charges against these individuals with several cases pending in Court;

21. On January 8, 2026, the Honorable Susan Roth granted Officer Newport a residential search warrant for 5237 N. Sherman Bl. #1. On January 9, 2026, Special Agents and Task Force Officers from ATF, Officers from the Special Investigations Division and Tactical Enforcement Unit of the Milwaukee Police Department served the search warrant at 5237 N. Sherman Bl. #1.

22. During the warrant service, Officers found a target in the house. It was determined that the suspect was not Cedric Strickland, but Kenneth Wade (black male, 11/11/1956). When Officer Newport observed Wade, Officer Newport recognized that Wade was the person that

13

Officer Newport observed on surveillance and was not Strickland. Officers searched the house. Officers from TEU told Officer Newport that when taking Wade into custody in the living room and having him sit down while the rest of the house was cleared, Wade refused to sit in a particular location. Wade informed Officer that there was a firearm on the couch. Officers found a black Smith and Wesson Equalizer 9mm pistol (S/N PJW1283), loaded with twelve (12) cartridges and affixed with a red dot that was inside of a Kydex holster in the couch along the south wall. Wade informed Officers of the whereabouts of the firearm, showing knowledge of the firearm. Wade was the only person in the house. When Officer Newport learned of the positive suspect identification of Wade, Officer Newport entered the house and asked Wade if he was a felon. Wade confirmed he was a felon from a long time ago, showing knowledge that he was a convicted felon. Wade said that he had lived at the residence for approximately one (1) year, which is accurate, because the Milwaukee Police Body Worn Camera where the occupant called 911 on Wade was on January 8, 2025. Officer Sean Patrick searched the kitchen. Officer Patrick found a blue Weighmax digital scale with white powdery residue (suspected cocaine) on the scale, inside of the north kitchen cabinet on the top shelf. On top of the fridge in the kitchen was a large roll of plastic wrap that was found in the room with the sealer. Officer Miguel Ortega helped search the living room. Officer Newport found a box of sandwich bags on the middle shelf of the TV stand with unused sandwich bags inside. Officer Newport found a black Weighmax digital scale with white powdery residue (suspected cocaine) inside of the box of unused sandwich bags. Officer Newport found a black cell flip phone on the TV stand, near the scale. Officer Newport later requested consent from Wade to search through his phone, which Wade provided consent to search his cell phone. Officer Newport reviewed, photographed and videoed the phone of its contents. Officer

14

Newport provided the phone back to Wade. Officer Newport found a red plate with Kenneth Wade's ID card on it, along with a razor blade and white powdery substance on the plate under the couch near the front. Officer Newport knows from experience that drug dealers commonly use some type of stable surface to cut and package drugs for sale. Officer Raynaldo Roman searched the northeast bedroom (which had an air mattress and dresser inside). The door had a padlock on it, which Wade had a key to open the padlock to the door. Officer Roman found a stainless steel Potane vacuum sealer that was covered in white powdery residue (confirmed by Nark 07 to be suspected cocaine). Later after the sealer was placed on Milwaukee Police inventory, the sealer was provided to the Milwaukee Police Forensics Unit for latent print collection. Inside of the same tote that had the sealer, there was mail for Kenneth Wade, along with scissors, plastic wrap, packaging tape and vacuum seal bags. In Officer Newport's experience, people involved in larger weight drug sales will commonly use a press or sealer to compress large weights of narcotics. Officer Newport has observed left-over residue of the substance that the dealer has compressed leftover on the tool. Due to the presence of cocaine, plastic wrap, packaging tape, scissors, and bags, Officer Newport believes that the sealer was used to package large volumes of cocaine. Inside the dining room, there was Wade's jacket that Officer Newport observed Wade wearing one day during surveillance. Inside of the jacket pocket was Wade's wallet with Wade's materials inside. Also, inside of the house, there were medications for Wade and Wade admitted to living at the house.

23. After the search warrant was concluded, Officer Newport interviewed Wade. Wade stated he purchased cocaine from a supplier, "Brian Jones" ("SOS"), black male, 40 years old, 6'00, 200 pounds, low haircut, light skin complexion, for approximately one (1) year (close to the

15

physical description of Brian Brown). Wade was purchasing 1-3 ounces approximately 3 times a month from "Jones". "Jones" drove a brown Chrysler Town and County Minivan (Brian Brown drove a Honda Odyssey minivan) with registration plates on it. Wade was unable to provide a phone number for "Jones" because Wade spoke with "Jones" two weeks ago, but Wade changed phones (confirmed by review of call log which showed earliest calls on December 29, 2025). Wade personally observed "Jones" with cocaine in the past, personally purchasing cocaine from "Jones" and observed "Jones" in possession of multiple ounces of cocaine at one time. Wade personally observed "Jones" with a duffel bag, knowing that "Jones" mixes up the cocaine and packages it and conceals it inside of a duffel bag for travel; Wade's knowledge of this was personally observed by "Jones" using the northeast bedroom where the vacuum sealer and large-scale packaging equipment was seen. Wade and "Jones" had two keys for the padlock that locked the door to packaging room. For disclosure, Wade was initially arrested during the execution of the search warrant but was released from custody and interviewed in a debrief setting to identify Wade's cocaine supplier. Wade voluntarily wished to cooperate with law enforcement for charging/sentencing consideration on two felony charges, Felon in Possession of a Firearm and Maintaining a Drug Trafficking Place. Based on Wade's statements, Officer Newport recognizes that this investigation is a cocaine trafficking conspiracy. Officer Newport knows that drug dealers will use/employ other drug dealers and users to further drug distribution. Based on Wade's interview, Wade and his cocaine supplier are conspiring to distribute cocaine together. Wade admitted to selling 1-3 ounces a month over the last year; Wade's total amount of cocaine distribution by his admission would equate to 336 grams to 1,008 grams of cocaine sold annually by Wade. At the time, Officer Newport did not have anything to dispute Wade's claims of someone

16

other than Brian Brown being the supplier and started searching for a Brian "Jones" in law enforcement databases.

24.	On January 12, 2026, ATF Special Agent Matthew Bammert and Officer Newport interviewed Wade. Wade would call his cocaine supplier using Wade's cellular phone number of 414-766-8435. Wade's cocaine supplier would commonly send another dealer to deliver cocaine to Wade (furthering a drug conspiracy of cocaine). Officer Newport asked Wade if that was the only number that Wade would use to contact his cocaine supplier and Wade confirmed that it was.

25.	Wade did not have the number for his cocaine supplier, because Wade said that he had a new phone recently (call logs showed earliest calls 12/29/2025). Wade provided his phone number as (414) 766-8435. Wade told me that Wade would call the supplier from (414) 766-8435. Working with DEA TFO Robert Gregory, TFO Gregory sent an administrative subpoena to T-Mobile to obtain cell records for (414) 766-8435. TFO Gregory sent Officer Newport the results and Officer Newport analyzed Wade's phone records.

26.	On January 13, 2026, Crime Scene Investigator Whitney Miller processed the vacuum sealer that Officer Newport seized as evidence during the search warrant at 5237 N. Sherman Bl. #1. CSI Miller processed the sealer for latent prints and recovered six (6) latent prints. On February 6, 2026, Latent Print Examiner Chet St. Clair reviewed the latent prints recovered by CSI Miller; LPE St. Clair identified two of the latent prints as Brian D. Brown (black male, 05-18-1973), right middle finger and right ring fingeron on the Potane vacuum sealer.

27.	Based on the investigation, interview with Wade, and identification of **Brian Brown**'s fingerprints, Officer Newport believes that Wade was intentionally withholding information regarding Brian Brown being Wade's supplier; therefore, Wade provided false

17

information to Officer Newport to mislead Officer Newport in not identifying **Brian Brown** as his supplier. Officer Newport believes that that Wade was providing truthful information involving Wade's cocaine distribution, based on the physical surveillance and what was recovered in the house. Officer Newport believes that Wade was protecting his cocaine supplier by altering Brown's last name and vehicle that Brown was driving to protect Brian Brown. Officer Newport informed the Milwaukee County District Attorney's Office that Wade lied to Officer Newport and wished to move forward with prosecution if the District Attorney agrees to criminally charge Wade.

28.     On February 10, 2026, after discovering that Brian Brown's latent prints were identified on the vacuum sealer seized from 5237 N. Sherman Bl. #1, Officer Newport conducted surveillance of Brian Brown's reported residence at 3367 N. 50th St., Milwaukee, Wisconsin. Officer Newport saw that Brian Brown's Honda Odyssey was not parked at the house, but there was a newer blue 2019 Dodge Ram (WI WM9948, VIN 1C6SRFJT4KN585835) parked in front of the house ("**subject vehicle**"). A DOT check showed the Dodge Ram was registered to Savannah F. Brown (DOB: 12-28-1999), to 3367 N. 50th St. Officer Newport has never seen this vehicle before parked at the residence in the past. Officer Newport searched through a Law Enforcement database and saw that the **subject vehicle** was recently parked at the residence on 02/04/2026 and 02/09/2026. Officer Newport had to leave for an unrelated operation, but when Officer Newport returned at 11:25AM, Officer Newport observed that the **subject vehicle** was gone. At 11:48AM, Officer Newport observed the **subject vehicle** approach North 50th Street and West Townsend Street. Officer Newport observed that Brian Brown was driving the **subject vehicle**. Brown continued southbound, passing his house and out of Officer Newport's view. At

18

11:53AM, Brown walked onto the curtilage of 3367 North 50th Street, used a key to unlock the front door, and entered the residence.

29.     Based on the information gathered during this investigation, to include physical surveillance, search warrants, the interview and forensic evidence, I believe that Brown is now using the **subject vehicle**, such that tracking its movements will reveal Brown's movements and provide evidence probative of his patterns, movements, and connections, which will in turn be probative of his drug-trafficking offenses in the Eastern District of Wisconsin.  Further, I believe that Brown will continue to use the **subject vehicle** for future drug-trafficking offenses in the Eastern District of Wisconsin, based on the information obtained in this investigation.  Based upon my observations, and those of other case agents, I know that the **subject vehicle** has been parked at 3367 North 50th Street within the Eastern District of Wisconsin for approximately a week.  Based on the disappearance of the van that Brown was operating, the new arrival of the Dodge Ram and physical surveillance of Brown driving the Ram, I believe that Brown is now in possession of this new vehicle in the Eastern District of Wisconsin. I also know that drug traffickers like Brown will frequently change their vehicles, in order to frustrate law enformcent's attempts to surveil them. I believe this is what Brown has done with the **subject vehicle**.

30.     In order to track the movement of the **subject vehicle** effectively and to decrease the chance of detection, I seek to place a tracking device in or on the **subject vehicle** while it is in the Eastern District of Wisconsin.  Brown has been known to and in the future may sometimes park the **subject vehicle** at or near the residence located at 3367 North 50th Street, Milwaukee, Wisconsin. It may be necessary to enter onto private property on or near 3367 North 50th Street; Milwaukee, Wisconsin, and/or move the **subject vehicle** in order to effect the installation, repair,

19

replacement, and removal of the tracking device. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation and removal of the tracking device during both daytime and nighttime hours.

## AUTHORIZATION REQUEST

31. Based on the foregoing, I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 authorizing periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days following installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

32. It is further requested that in the event that the **subject vehicle** travels outside the territorial jurisdiction of the court, the order authorize the continued monitoring of the electronic tracking device in any jurisdiction within the United States, pursuant to 18 U.S.C. § 3117.

33. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the owner or user of the **subject vehicle** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is

20

reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21